Good morning. Good morning, Your Honor. Good morning, Your Honors. May it please the Court, Breonna Frankel appearing on behalf of Appellant Petitioner Leon Brown, IV. Your Honors, as a preliminary matter, I wanted to, with your permission, briefly address the government's 28-J letter filed last Friday. The government's letter shows that the government does not understand what materials Appellant was able to present in the military courts on direct appeal and the materials that he was not. The government cites to S.E.R. 36-37. If you look carefully at those materials, none of those are the same materials that Appellant has argued that the government failed to turn over pursuant to Brady. Therefore, I want to make it clear here. Do you need any water? Are you okay? I'm okay. Sorry, my throat's a little sore. I want to make it clear here that the government seems to be conflating civilian courts and military courts, and they do not function in the same way. Any material that Appellant received after July 24, 2017, which was the drop-dead deadline, could not be presented to any military court. So the government states in its 28-J letter and its brief multiple times that Appellant was able to present some of this material on direct appeal in military courts. He was not. That's absolutely false. So with that, I wanted to just get to the... Can you talk to me about what standard Mr. Brown must meet to show the district court erred in denying his claim of actual innocence? So... I mean, this case is a little bit different than what we usually see on habeas. So, you know, we have to kind of... It's not the typical, okay, we go to ADPA and this, that, and the other. Right. So, Your Honors, the standard here is did the military courts give a full and fair review under Burns v. Wilson of all of Appellant's claims? And it is clear here that they did not. What's the biggest issue that you got that they didn't do? Or maybe there's more than one issue, but the biggest one. So, Your Honors, the most, the clearest error here is that the government failed to turn over key exculpatory and impeachment evidence, both before trial and for years afterwards, despite Appellant's FOIA requests. And those Brady materials that were withheld not only supported his Brady claims, but also his Messiah claims, because it went to show not only that the government withheld impeachment evidence and evidence of innocence, but also evidence that showed that his Sixth Amendment right to counsel had attached prior to preferral of charges. Well, what is your best authority that the Sixth Amendment even applies to court martial proceedings? And then I'll go to, I jumped, we had a collision here, so you can go first if you want. No, no, no, please. Well, Your Honors, both in Daigle and Middendorf, which the government cites as argument that Sixth Amendment right to counsel doesn't attach in court martials, which is absolutely erroneous, both of those cases say, and military courts have held over and over again, that a military defendant in a general court martial, which is what occurred here, not a summary court martial, the government was mixing up summary and general court martials, in a general court martial is entitled to a Sixth Amendment right to counsel. So it's been held over and over again. So appellant had a Sixth Amendment right to counsel. It was violated because the government withheld key evidence that showed that his Sixth Amendment rights had attached prior to preferral of charges. Was he in the brig because of misdemeanors or because of these charges? That's what the other side claims, that these other charges didn't come until later. So, Your Honor, the appellant was in the brig for various sort of more minor crimes, possession of marijuana, possession of mushrooms. The government had not formally preferred the more serious charges, the alleged sexual assaults, until later. However, the government withheld documentary evidence that showed that it intended, the government's role had shifted from investigation to prosecution prior to the time that they illicitly audiotaped his conversations in the brig, and that they intended to charge him with various crimes, including sexual assault of a minor. But the government, due to its misconduct, it withheld the documentary evidence to show that. So appellant didn't even realize it. His defense counsel didn't realize it. And, you know, we argue that that affected the way his defense counsel was able to defend his case because they didn't realize that his Sixth Amendment right to counsel had already attached. So let me go to Judge Thomas because I interrupted. Yeah, no, but you may have answered my question, which is that I was going to ask you what you think is the most significant piece of evidence that the government withheld. Your Honors, there was a lot of evidence that they withheld. One of the most significant pieces of evidence here was impeachment material for Air Force personnel, Elliot, Telford, and Gable, demonstrating that they cooperated with the prosecution in exchange for leniency in their own court-martials. In addition, there were witness interviews by FOSI, which is the Air Force Office of Special Investigations. It contradicted and undermined the testimony of key witness Kelsey Wallace, and she was basically the only witness to the alleged sexual assaults. In addition, there was impeachment evidence for Michael Bowen, showing that he lied on multiple occasions. There was police and arrest records for Kelsey Wallace, which showed that she gave false testimony at trial, and Elliot's arrest record at a Walmart for theft and giving false information to police. When you look at all of these collectively, which the district court did not do because the district court erred in finding that these claims were procedurally defaulted. And if I read the government's brief correctly, the government essentially concedes now that the district court erred in finding that an appellant could have filed a petition for quorum nobis. He could not because he is still incarcerated, and a threshold requirement for a petition for quorum nobis is that the appellant no longer be incarcerated. Therefore, he couldn't have filed an Article 73 motion for new trial because it was more— the government didn't turn over these materials until more than a year after that deadline, and he couldn't file a petition for quorum nobis. There was no means by which he could have raised these claims in the military courts. What relief do you seek here? Do we send it back down for the district court to find out what happened, or does it go back to the military courts? Your Honors, I would argue that it's clear on this record that the evidence withheld by the government, and the government has never disputed that it failed to turn it over, that this evidence is material under Brady. And if you find that this evidence is material under Brady, this court in Silva and the Supreme Court in Giglio has said when the government has suppressed material evidence favorable to the defendant, the conviction must be set aside. We believe on this record that the Brady claims can't—that this court can determine that the evidence withheld was material, and therefore, appellant's conviction should be set aside. In the alternative, if this court believes that at least that the district court erred in finding that his claims were procedurally defaulted, that at least to remand to the district court with instructions that the district court must review the Brady materials on the merits because it didn't do that. And one more point I'd like to make, Your Honor, with regard to that is the district court also erred. If you look at 1 ER 14 to 15, it applied a harmless error analysis to appellant's Brady claims. The—Kiles has said once the materiality of the suppressed evidence is established, no further harmless error analysis is required. The district court here said, well, even if the government had turned over these materials prior to trial, it wouldn't have mattered because there was other evidence in the record, namely the audio tapes. That was a completely improper standard. The district court applied a harmless error analysis, and it should not have done that. So to answer your question, Judge Seiler, if you do remand, we believe it should be with instructions to the district court and for it to look at these materials collectively, not singly, collectively. And if you look at that, it's clear that it's material under Brady. What happens if the district court issues the writ? Does it go back to the military court to have a retrial? Well, Your Honor, my understanding is that appellant is a civilian now, and so the military court— They wouldn't have jurisdiction. They wouldn't have jurisdiction, correct. Then would the district court have jurisdiction? It can. They can try people who are out of the service, right? Your Honor, I'm not sure of that. This is an unusual posture here because, as you know, once a military petitioner is convicted, they basically kick them out of the service. So that's why I believe that the military courts would no longer have jurisdiction here. And again, if you look at the record, it seems clear here that looking at these materials collectively, this is a Brady violation. And the government's—it also affected not just appellant's ability to bring his Brady claims, but the government also withheld evidence that supported his Messiah claim. It's clearly here that prior to the government's wiring of the brig where he was, that his Sixth Amendment right to counsel had attached because the government's role had shifted from investigation to prosecution because they clearly had determined, and if you look at the records that we cite, it's 2 ER 176 to 178 and 272 to 288. It clearly shows that the government had not just decided to charge appellant with various crimes, like the use of mushrooms, use of marijuana. It was the more serious crimes. They had determined that he had violated 120, Article 120, and that they were going to prosecute him for sexual assault of a minor. But they hadn't charged him at that point, right? Correct, that's correct. They hadn't talked about it. That's correct, Your Honor. They hadn't formally preferred charges, but under Ankeny and Wattenberger, which is binding precedent on the military courts, those courts have held that the Sixth Amendment right to counsel can attach prior to formal preferral of charges in certain, and the Ankeny cites to Moran v. Burbine, the Supreme Court case, noting that that can happen when the government's role switches from investigation to prosecution. Here the government had stopped investigating. They had finished interviewing all the witnesses. They had done all that, but they purposely held off on charging him, and, Your Honors, allowing the government to do this undermines the protections of the Sixth Amendment. They specifically held off so that they could wire the confinement center and send in confidential undercover informants in violation of Messiah in order to— Do you want to save any time for a rebuttal? You're down to two minutes. Yes, I'm sorry, I would. Thank you. I believe I forgot to ask that.  Okay, you've got two minutes. Thank you so much. Okay, we'll hear from the government. Good morning. Good morning, Your Honors. May it please the Court. Alexander Robbins on behalf of the United States. Unless the Court directs me otherwise, I was hoping to start with what my colleague said was the clearest error in her view, which is the Brady issues and the FOIA documents. Just to clear this up at the outset, it's simply not the case. I think I counted six categories of Brady material that the petitioner says were not discovered until 2010 or 2018 in these FOIA requests, and this is starting with the categories. I guess she starts on page 16 of her brief and lists these six different categories. At the outset, a number of these categories of documents didn't even come from the FOIA requests, and by my count, three of the categories of documents were actually discussed by the military courts below. So although our position has been that the district court in the first instance never should have had to untangle exhausted versus unexhausted claims, I would like to go through them if possible. The benefits to the government's informants issue, Elliot, Gable, Telford, and the leniency requests and their hope of getting leniency, this was an issue that was addressed by the military court of appeals. It's on page 32 of the SCR. The crime scene surveillance photograph issue, the pictures of the petitioner's house and his bedroom and the angle of what someone could see from the door, this was addressed by the military court below on page 37 of the military court of appeals decision. The issue about the abortion clinic in Fargo, North Dakota, that issue was addressed at page 32 by the military courts. So off the bat, three of the issues that the petitioner is suggesting are new issues were addressed by the military courts below. Another issue, and we mentioned this on page 56 of our brief, this issue about the local police department records for Kelsey Wallace, wouldn't be a Brady issue at all. Those documents weren't suppressed. As the petitioner explains in his affidavits that are included in the excerpts of record, he got those records from the Minot and the local county police department. Those weren't FOIA records that came from the federal government. Those weren't records that were in the possession of the Air Force to begin with that even could be suppressed. That leaves two categories of documents, Bowen's statement about marijuana and Valerie Mattson's statement, which there's a complication there because, at least as I understand it, the petitioner's argument has changed from opening brief to reply brief. But just to start with the easy one, Bowen's statement, the information that is, I guess it's on page 19 of the opening brief, Bowen's statement to the military police that they got through the FOIA request is just a statement that Michael Bowen was a drug user. He used weed, marijuana, multiple times that he admitted to, and that was their additional information that they got that, I guess, the suggestion is could have been used as impeachment information. Certainly, as a general matter, someone's lying to any government official can be used as impeachment information, but the idea that his lying about using marijuana and then admitting it when he was questioned about it would be necessary to disturb the military court's decision here. Is the law from a messiah? Is that applicable to the military? Is what, Your Honor? The law from a messiah. A messiah. On the Sixth Amendment issue, yes, the Constitution is applicable to the military, but there is a different standard on the Sixth Amendment issue between the constitutional standard that applies to the military and to the civilian courts, and the military's own internal rules that are more defendant-friendly than the messiah standard itself. And that's what we argued in our brief, that those are two separate standards. And, in fact, one of the cases that the reply brief cites for the first time on that subject, Swofford, an intermediate military court case, actually breaks that issue down and says exactly the same thing that the government said in its answering brief, that the Sixth Amendment standard is distinct from, it's called Rule 405. There's a military rule about being represented by counsel that is broader than the Sixth Amendment messiah standard. Well, if he's in custody and they're recording it and you're sending an informant, if we determined that Mr. Brown was entitled to some relief on those recorded statements that they should have been excluded, would there be enough evidence outside of that? I'm not sure that's the right question. I think that there would be enough evidence in the sense of Jackson's sufficiency of the evidence, I believe. But we are not arguing, and this is why we spend as much time focusing on the Sixth Amendment issue as we did. Obviously, it's the petitioner's case to make. But in our judgment, when we first got this case, to try to figure out whether, in fact, the military courts got it right, the Sixth Amendment issue is, I mean, we're not arguing it's harmless or non-prejudicial under Kyle's. We don't think we can. Everybody throughout this whole process, from the military courts to the district court to petitioner's affidavits to his defense counsel's affidavits and the record, understood that the recorded incriminating admissions that he made in confinement were incredibly, extremely damning and were very, very strong evidence of his guilt. And that's why the defense lawyers said that one of their strategies at trial was to keep as many of those recordings away from the trier of fact as possible. So those were certainly prejudicial if they had been admitted improperly. They were not admitted improperly. And the reason they weren't admitted improperly is, as we have argued, that the Messiah standard, as articulated in Cobb and McNeill, that's well known to this court and the civilian courts, is triggered with the formal initiation of charges. In this case, in the military system, the preferral of charges. The cases that the petitioner cites to are before McNeill and before Cobb made that clear. And the Swafford case that petitioner cites to in his reply brief actually breaks down those two different issues, the Sixth Amendment on one hand, and then the military's own internal rules about representation of counsel. On the other hand, the military's internal rules are more defendant-friendly in the sense that they are not as strictly Blockburger-style, count-by-count for looking at factually related counts. Okay, so you're talking. Your lips are moving. But tell me why those statements were properly admitted. Give me the analysis on Messiah and its application to court-martials and also the status of the charges. Yes, Your Honor, because at the time he made those statements, he had not been charged with sexual assault or rape of anybody, including the two victims in this case. Those charges had not been brought. It puts it squarely within the universe of Cobb itself, where there was a burglary and a double homicide, obviously related. Someone burgled a house and then killed two occupants. He was prosecuted for the burglary and was being actively investigated for the double homicide and made his statements about the double homicide while he had pending charges for the burglary. And the Supreme Court in Cobb said that the analysis for the Sixth Amendment, right to counsel, and the Messiah, derivatively, is count-by-count. As in Blockburger, it's by count. There's no exception for closely factually related counts. But does the Sixth Amendment apply to general court-martial proceedings? So, Your Honor, we flagged this in our brief. The law of this circuit, and I don't think the court needs to rely on this or go there, but the law of this circuit in Daigle is that it does not because, with respect to my colleague, simply reading the Daigle decision, which is not a very long decision, the court here in Daigle said the Sixth Amendment does not apply to court-martial proceedings, period. What the court then did in Daigle was ruled that under the Fifth Amendment there's a due process right in some types of court-martial proceedings to counsel. And then the Supreme Court, in Middendorf a few years later, overruled that piece of it as applied to summary court-martial proceedings. So, in other words, this court said there's a Fifth Amendment right to have lawyers sometimes in summary court-martial proceedings. The Supreme Court said, no, there's not, in Middendorf, but did not disturb the Sixth Amendment analysis in Daigle. I can point the court. Literally, I found this while my colleague was up there. In Daigle itself, on page 364 of Daigle, this court said, we need say only that we agree with his, the professor's, conclusion that the Sixth Amendment was not intended to apply to trials before court-martial. Now, that would be a much more, I suppose, practically drastic holding in the sense that this issue has not been litigated since then, which I guess Daigle was decided in 1974. And the court does not need to reiterate that holding because the military has, by its own internal rules, more defendant-friendly representation rules than the Constitution requires. And so this issue essentially never comes up. So we're not asking the court to go there. We were saying, as a matter of just the law and the standard that this court should know about, accurately put in our brief, that the Sixth Amendment, according to this court's holding in Daigle, which hasn't been disturbed since, does not apply to court-martial. So the elephant in the room, how does someone that's in the crypts become a captain in the military? By all accounts, and I guess my opposing colleague would know more about this than I do, he was a good officer. So I think this is maybe a little bit aside,  maybe as a good military officer and being a violent gang member, but certainly in the sense of being a competent individual, there's not necessarily attention there. He appears to be a very hardworking and intelligent defendant. You have to practice stranger than fiction sometimes. I've done a lot of criminal cases in my day. I mean, there are many, unfortunately, and tragically in our system, many highly functioning, highly intelligent criminal defendants. That's a fact, and it's unfortunate for the system. It's not a good thing that that's true, but it is, and so I don't think there's any tension there. Just from reading through the e-mails and the filings and the affidavits the petitioner submitted in this case, he has been very assertive and sort of on the ball about getting whatever additional information. Let me ask you about his sexual innocence claim. Why aren't the victim's statements that they did not engage in sexual activity with Mr. Brown sufficient to raise the question of actual innocence? Because you have the recantation here. Right. I think that's, frankly, an easier one than the Messiah claim. It's just not. If the rule were otherwise, then you would have an actual innocence claim any time a victim recanted, which unfortunately happens. It's not entirely uncommon, especially in cases where you have people who know each other in the same community who still have to live with the perpetrator or family members of the perpetrator. So I don't think that's—the standard cannot be that the recantation of a victim by itself means you win your actual innocence claim. It also doesn't make much sense in the context of this case where the victims themselves—in one case, the one victim didn't testify. In the other case, she did testify, G.B. testified, but said she didn't remember— sorry, she did not say she had sex with the petitioner. She testified and then testified that she was basically extremely drunk and didn't remember what happened. So the fact that she later recants in the sense of going a step farther and saying, I remember not having sex with the petitioner, is not— I mean, I think my colleague characterized it as actually consistent with her trial testimony that she didn't remember having sex with the petitioner on that night, and the other victim, K.T., did not testify. If I could get back to the one Brady issue, just on the sixth category of the six Brady statements I was reading through, I went through five. There's a wrinkle on the sixth, and at the risk— I want to make sure that I understand my colleague's argument correctly. On the Valerie Madsen statement, looking at page 29 of the opening brief, the claim there about Valerie Madsen's statement, at least as we read it initially, was that Valerie Madsen was interviewed by the Air Force in 2013 and said, you know, I was at this party, and I didn't see the petitioner having sex with the victim. She—that's page 29. And the opening brief cites for that proposition two different things in the record. ER-202, which is the 2013 Air Force OSI statement, and 254, which is the post-trial, after-the-fact declaration, and cites those two together. Our understanding of that argument was that the information that she said later in 2018 that I told the Air Force back in the day that I had eyes on petitioner the whole time, that he never had sex with the victim, that didn't make it into the Air Force memorandum. And so we understood the defense argument to be that the after-the-fact declaration was Brady evidence that should have been included in the original 2013 memo. In the reply brief at page 17, I think the petitioner says we didn't get the memo, like the 2013 memo wasn't produced at all, which was not our understanding of the argument originally. And if you look at the 2013 memo itself on page 202 of the ER, it doesn't appear to be one of the FOIA documents. It doesn't have any of the FOIA redactions. It has all kinds of PII. It's unredacted, whereas all the FOIA documents not only have redactions but have the little FOIA exceptions listed on them. So the record doesn't make clear, at least to our read, where that document came from, and we had initially understood the petitioner would be making the argument that the after-the-fact claim, I had eyes on them all night, nothing happened, was what they were referring to, not that the document itself wasn't handed over. And if I'm wrong about that argument, I apologize. If they are making the argument that the document itself wasn't handed over, then our response would be it doesn't appear to be one of the FOIA documents, but there's nothing in the record to suggest or to actually show where it came from, which, to use up my, if I have ten more seconds, I would like to say that this is sort of part and parcel of the problem of this case. A civilian federal district court should never be in the position of having to make these determinations on very important issues in the first instance without the benefit of the military record. We don't have the entire military record. This court doesn't have the entire military record. And so that is why the exhaustion requirement is so important, that you, at the very least, petitioner needed to show the district court that he tried to exhaust his remedies. And we're not abandoning the district court on the Coram Nobis issue. We're saying maybe the petitioner might be right, even if the district court shouldn't have labeled it Coram Nobis. Everyone agrees under Doneto that their All Wrets Act does apply to military courts to the extent that they have jurisdiction. We agree with them on that. Okay. Let me find out if my colleagues have any particular questions on that. I'm sorry. Yes, Your Honor. Because they don't. So your time has gone into overtime. Thank you very much, Your Honor. So thank you. All right. Ms. Frankel, I'll give you three minutes. Okay. Thank you, Your Honor. Since I try to kind of be as evening out as I can. Well, I appreciate you giving me the time since I forgot to ask for it at the beginning. Your Honors, there's a few things that my colleague had mentioned that I believe are untrue. Or, again, I believe that it goes to the government not understanding the differences between military courts and civilian courts. So the government spent the first part of their oral argument going through each item of evidence saying that it had already been presented to the military courts. They cite S.E.R. 32. S.E.R. 32, at S.E.R. 32, the Air Force Court of Criminal Appeal states, Appellant contends that his defense counsel should have cross-examined Gable and Elliott about their clemency requests. Your Honors, Appellant was speculating that Gable and Elliott had gotten clemency because in the military courts, during direct appeal, appellants, any defendant can ask the convening authority post-trial for an automatic clemency review based on any matter. Appellant did not have the clemency documents because the government didn't turn them over. He was just speculating that they had asked for clemency because everybody in the military asks for clemency. The pictures of Petitioner's home at S.E.R. 37, so S.E.R. 36 to 37, it lists items that Appellant had argued in his motion for new trial. None of those, the pictures, there are three sets of pictures here, photographs. One set of photographs he had, the other two he did not. So there is no overlap. Despite the government's contention, there's no overlap between those two, between the documents the government didn't turn over until years later and the materials he presented in the military courts. And, Your Honors, the government keeps saying Appellant never told the district court what materials he presented on direct appeal and what materials he presented to the district court. He absolutely did. Over and over again he said, I was not able to receive any of these materials, any of these Brady materials, any of the materials regarding the Messiah claim until, at the earliest, was June 2018, more than a year after the two-year deadline had expired, and some not until March 2020. The government, for years, Appellant was in prison trying to get them to respond to his FOIA request, and they refused until the Air Force Office's special investigation came in. So with respect to Wallace's arrest records, the government also brings that up. At 2 ER 306, Appellant's trial counsel said, declared in his declaration, that he requested during discovery for any evidence tending to diminish the credibility of all potential witnesses, and the government agreed to provide this. The government, the AFOSI, had run a background check on Wallace in February 2014 and had gotten all of her arrest information. They had agreed to turn it over to Appellant, and they never did. So, Your Honors, I see you. Okay, you're over time. Let me find out if my colleagues have any additional questions. All right. Thank you very much, Your Honors. I appreciate it. Okay, thank you both for your helpful argument in this matter. It will stand submitted.
judges: Siler, CALLAHAN, THOMAS